**Robert BRAINARD**

v.

**IMPERIAL MANUFACTURING COMPANY.**

Civ. A. No. 82–0013.

United States District Court, D. Rhode Island.

May 12, 1983.

Pearlman & Vogel, Providence, R.I., for plaintiff.

William R. Landry, William P. Robinson, III, Edwards & Engell, Providence, R.I., for defendant.

## OPINION AND ORDER

PETTINE, Senior District Judge.

This is a diversity suit pursuant to 28 U.S.C. § 1332 (1982 Supp.). The plaintiff was previously employed at the Imperial Manufacturing Company (Imperial) for an indefinite term. He alleges that he was unlawfully terminated from his employment at Imperial. Defendant Imperial moves for summary judgment on two grounds. First, it contends that this Court lacks jurisdiction since the plaintiff failed to exhaust his contractual remedies under the collective bargaining agreement currently in effect between Imperial and the United Paperworkers International Union. Second, defendant argues that plaintiff's amended complaint fails to state a claim upon which relief can be granted under Rhode Island law.

On December 29, 1980, an explosion and fire at the Imperial Manufacturing Plant in Ashaway, Rhode Island, severely burned and injured Michael Schwab. As a result of these injuries, Schwab filed suit in the Rhode Island Superior Court for Washington County against his supervisors at Imperial. On November 10, 1981 Schwab's lawyer subpoenaed Robert Brainard, the plaintiff in this case, to testify at a deposition concerning the December 29th explosion and fire. Brainard was deposed between 11:00 a.m. and 12:30 p.m. on November 18, 1981. After his deposition was completed, Brainard remained at the lawyers' office at their request, to discuss his testimony and other matters relating to an Occupational Safety and Health case that was pending against Imperial. As a result of these discussions, Brainard was absent from his scheduled 3:00 work shift at Imperial.

On December 8, 1981, Brainard was suspended from his position at Imperial for a period of four days allegedly due to his chronic absenteeism. Brainard had previously received several oral and written warnings and had been suspended for three days for absenteeism. The four-day suspension he received on December 8th was in accordance with Imperial's progressive disciplinary formula for chronic absenteeism. Brainard contends that if he had not been charged with an unexcused absence on November 18, 1981, he would not have been suspended.

On January 11, 1982 Brainard brought suit alleging that Imperial had unlawfully suspended him in retaliation for his testifying against it at his deposition. Subsequently, on June 3, 1982, Imperial permanently discharged Brainard from its em-

ployment. On October 14, 1982, this Court entered an order authorizing plaintiff to amend his complaint to include allegations that he had been unlawfully terminated. In his amended complaint, plaintiff asserts four causes of action. First, he alleges that he was suspended and subsequently dismissed in violation of an implied covenant of good faith and fair dealing in his employment contract with Imperial. Second, he contends that his suspension and discharge were "retaliatory, intentional and abusive and constituted a breach by defendant, as the employer of the plaintiff, of a tort obligation arising from the employment relationship." Amended Complaint at 7. Third, he claims that defendant intentionally inflicted emotional distress upon him. Finally, plaintiff alleges that his abusive suspension and dismissal violated fundamental public policy. Plaintiff seeks $200,-000 in compensatory damages and $100,000 in punitive damages.

■ Presently before the Court is defendant's motion for summary judgment. It is well established that summary judgment will only be granted where, viewing the record in the light most favorable to the party opposing the motion, there exist no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Santoni v. Federal Deposit Insurance Corp.,* 677 F.2d 174, 177 (1st Cir. 1982); *Hahn v. Sargent,* 523 F.2d 461, 464 (1st Cir.1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976). Defendant argues that summary judgment is appropriate in this case because plaintiff has not exhausted the grievance and arbitration remedies provided by the collective bargaining agreement between Imperial and the United Paperworkers International Union. This argument is without merit. The uncontested affidavit of John MacDonald, the Chief Steward of Local 1468 of the United Paperworkers International Union, makes clear that Brainard filed a grievance with union officials concerning his discharge, that this grievance was denied at a step 3 meeting held on January 26, 1983 between Imperial and officials of Local 1468, and that the denial of Brainard's grievance was

a final resolution of his claim under the terms of the collective bargaining agreement. Defendant has not, therefore, met its burden of proving that it is entitled to judgment as a matter of law on the ground that plaintiff has failed to exhaust his contractual remedies.

■ Defendant also argues that plaintiff fails to state a claim upon which relief can be granted under Rhode Island law. Defendant correctly points out that it is well settled Rhode Island law that an employment contract for an indefinite period is terminable by either party at will. *Rotondo v. Seaboard Foundry, Inc.,* 440 A.2d 751, 752 (R.I.S.Ct.1981); *Oken v. National Chain Co.,* 424 A.2d 234, 237 (R.I.S.Ct.1981); *School Committee of Providence v. Board of Regents for Education,* 112 R.I. 288, 308 A.2d 788, 790 (1973). Plaintiff, however, argues that the Rhode Island Courts have not yet been presented with the question of whether the retaliatory or abusive discharge of an at-will employee is actionable. The Rhode Island Supreme Court's decision in *Oken v. National Chain Co.,* 424 A.2d 234 (R.I.S.Ct. 1981), plaintiff contends, indicates that the Court would recognize such a cause of action under the appropriate circumstances. In *Oken* the Court stated:

> The trial justice found that the employment agreement was terminable at will, and we see no reason to upset that finding. Thus, Oken had no vested right to continued employment. The old commission structure was modified. The continuation of Oken's employment was sufficient consideration to support this modification. Williston, *Contracts* § 135A at 569 (3d ed. 1957); 1 Corbin, *Contracts* § 136 at 581 (1963). Oken had the option of continuing on Cipolla's terms or leaving the company. He chose the former. Oken contends that he was coerced into this agreement. We see no evidence here of any coercion or bad faith by National. Instead, the company appears to have made a business judgment based upon a dramatic increase in the price of metals. *See Fortune v. National Cash Register*

*Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977), where the court said, "[A]n employer needs flexibility in the face of changing circumstances." *Id.* at 102, 364 N.E.2d at 1256.

424 A.2d at 237.

Plaintiff argues that the Court's statement that there was no evidence of "bad faith" coupled with its citation of *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977), a leading decision on the issue of retaliatory or bad faith discharges of at-will employees, indicates that the Court would recognize a cause of action for the abusive or retaliatory discharge of an at-will employee.

The Court rejects plaintiff's contention that the wrongful termination of an at-will employee is presently actionable under Rhode Island law. The Rhode Island Courts have not recognized the right of at-will employees to sue for wrongful discharge. *See Feinberg v. Newport Hospital,* No. 78–0274, (D.R.I. Jan. 12, 1982), *aff'd,* 692 F.2d 745 (1st Cir.1982); *Rotondo v. Seaboard Foundry, Inc.,* 440 A.2d 751, 752 (R.I.S.Ct. 1981). In *Rotondo* the plaintiff specifically argued in his brief to the Rhode Island Supreme Court that the wrongful discharge of an at-will employee should be actionable both in contract and in tort. The Supreme Court summarily dismissed these contentions in light of the well established rule that a promise to render personal services to another for an indefinite period is terminable at any time at the will of either party. *Rotondo v. Seaboard Foundry, Inc., supra,* 440 A.2d at 751.

The Rhode Island Supreme Court in no way departed from this rule in *Oken v. National Chain Co.,* 424 A.2d 234 (1981). The statement that the defendant employer had not acted in bad faith was made in response to plaintiff's claim that he had been "coerced" into accepting a certain employment agreement, *id.* at 237, and not in response to a claim that the employee had been wrongfully discharged. Moreover, the Court cited *Fortune v. National Cash Register, supra,* solely for the proposition that "an employer needs flexibility in the face of

changing circumstances". *Id.* (quoting 373 Mass. at 102, 364 N.E.2d 1251). If anything, this supports defendant's claim that the wrongful discharge of an at-will employee is not actionable. In short, there is simply no basis for plaintiff's claim that *Oken* is implicit acknowledgement that the Rhode Island Supreme Court would abandon the terminable at-will rule under the appropriate circumstances. Indeed, the Rhode Island Supreme Court in *Rotondo v. Seaboard Foundry, Inc., supra,* cited *Oken* for the proposition that employees at-will can be terminated at any time. 440 A.2d at 742.

A plaintiff who invokes the diversity jurisdiction of the federal court is in a peculiarly poor position to assert a common law cause of action not previously recognized by the state courts. *Cantwell v. University of Massachusetts,* 551 F.2d 879, 880 (1st Cir. 1977). Because a federal court sitting in diversity is bound to apply state law as it has been declared by the state courts, *id., Gravina v. Brunswick Corp.,* 338 F.Supp. 1, 2 (D.R.I.1972), the Court finds that plaintiff's discharge did not give rise to a cause of action in either contract or tort under Rhode Island law. Accordingly, the Court grants defendant's motion for summary judgment.