*Western District*

CELINE GURLEY, ET ALS, Petitioners

*v.*

COMMONWEALTH OF MASSACHUSETTS,
Respondent

Argued: June 19, 1972 - Decided: Aug. 23, 1972

*Present:* Garvey, P.J., Dudley, Cimini, JJ.

Case tried to *Sloan, J.,* in the District Court of
Springfield No. 214717.

Garvey, P.J. The petitioners, in this case, are the widow and four minor children of Joel Gurley, who was slain on November 20, 1970 in Springfield. They seek compensation under St. 1967, c. 852, now G.L. c. 258A, entitled "Compensation of Victims of Violent Crimes." After a hearing their claims were denied and they requested a report.

§ 2 of c. 258A gives jurisdiction of such petitions to the District Courts and the right of review by the Appellate Division is granted by G.L. c. 231, § 108.

The facts were stipulated or undisputed. We therefore treat it as a case stated. It was the duty of the judge, and now ours, to order the judgment required by the application of correct principles of law to the facts stated. *Richard D. Kimball Co.* v. *Medford,* 340 Mass. 727, 728. *Associate Discount Corp.* v. *Woods,* 41 Mass. App. Dec. 99, 102.

The reported evidence shows:

The claims were timely filed and the petitioners are eligible and have complied with all procedural requirements.

The victim was thirty-two (32) years of age when he was shot and killed in Springfield, Massachusetts on the morning of November 20, 1970, without provocation, by his landlord, Robert Boudreau. Boudreau was convicted of manslaugter and sentenced to serve a term in prison. The crime was immediately reported to the Springfield Police Department.

The victim's widow, the petitioner Celine Gurley, was 29 years of age and their four children ranged in age from three to seven years.[1] All were dependent for support upon, and were living with the victim at the time of his death. They are not related by blood or marriage to Boudreau.

The deceased victim was employed by Pratt & Whitney Aircraft of East Hartford, Connecticut. He was earning approximately $8,509.-80 a year. His life expectancy was 38.19 years with an earning capacity of $324,961.76.

The widow's reasonable and necessary expenses on account of her husband's death which were not reimbursable were as follows: Funeral bill of $1,516.00; cost of burial lot $150.00; cost of opening grave, $115.00.

The petitioners received, as a result of the death of the victim, life insurance proceeds in the amount of $17,000.00. The widow also has, or will receive $2400.00 over a two year period payable at the rate of $100.00 monthly under another insurance policy. She also receives from Social Security $360.00 per month and $48.00 every two weeks from the Welfare Department of the Commonwealth of Massachusetts.

The court made the following special finding of fact:

"In addition to the facts stipulated by counsel

---

[1] Joel J., Doreen A., Edward R. and Lorrie Ann Gurley.

I find that the victim on his death had a life expectancy of 38.19 years with an earning capacity of $324,961.76. I find that the claimants received from a double indemnity insurance policy the sum of $17,000.00.

"They are receiving from another policy the sum of $100.00 monthly up to November 20, 1972 and social security of $360.00 monthly and $48.00 every two weeks from the State Department of Public Welfare."

The first sentence of paragraph four of section five of the Violent Crimes Act provides: "Any compensation for loss of earning or support shall be in an amount equal to the *actual loss sustained;* provided, however, that no award under this chapter shall exceed *ten thousand dollars.*"[2] (emphasis supplied)

The second paragraph of section six provides: "Any compensation paid pursuant to this chapter shall be reduced by the amount of any payments received or to be received as a result of the injury (a) from or on behalf of the offender, (b) *under insurance programs,* (emphasis supplied) or from public funds."[3]

The petitioners contend, that because the judge found "that the victim on his death had a life expectancy of 38.19 years with an earning

---

[2] The last sentence of the first paragraph of section five provides that one hundred dollars shall be deducted from any award for "out of pocket" loss.

[3] We need not decide whether social security payments are made "from public funds".

capacity of $324,961.76'', the $17,000.00 received by them from the insurance proceeds, plus other benefits set out above should be deducted from the $324,961.76 which would leave mathematically an "actual loss sustained" many times in excess of the $10,000.00 limitation. And therefore, the petitioners are entitled to the maximum compensation, namely $10,000.00 less the $100.00 deduction provided in section 5.

The Commonwealth takes the position that the petitioners' having received the $17,000.00, an amount in excess of the maximum compensation permitted are not entitled to any benefits provided by the statute.[4]

"The cannon of interpretation applicable ... is that its words are to be construed according to the common and approved usage of the language considered in connection with the cause of its enactment, the preexisting state of the law, the mischief to be remedied and the main object to be accomplished." *Brown* v. *Robinson*, 275 Mass. 55, 57.

It seems to us, in these petitions, a determination is first made of "the actual loss sustained" by eligible petitioners, limited to $10,000.00. Then the "loss", so found, is reduced by the

---

[4] Section 6 provides, in part, that in determining the amount of compensation "The court shall take into consideration ... the availability of funds appropriated for the purpose of this chapter." The respondent argues that funds sufficient to pay outstanding awards had not been appropriated at the time of the finding in this case. Because this issue was not presented to us in the report we cannot consider it.

amounts, if any, received by the petitioners from the sources specified in section six.

We think the words used in section five "no award under this chapter shall exceed $10,000.00" and in section six "any compensation paid ... shall be reduced by the amount of any payments ... under insurance programs" when read together compel, on the facts in this case, that the petitioners are not entitled to compensation because of their receipt of insurance proceeds in excess of $10,000.00.

As we find no error the report is to be dismissed.

ROBERT H. QUINN, *Attorney General*
   for the respondent.
HERBERT MURPHY
   of Springfield for the petitioners.