ANNE J. CAMPBELL *vs.* COMMISSIONER OF PUBLIC WELFARE.

Middlesex.   March 5, 1986. — April 22, 1986.

Present: HENNESSEY, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Public Welfare. Aid to Families with Dependent Children. Constitutional Law,* Equal protection of laws.

Where the Department of Public Welfare had employed federally-prescribed retrospective budgeting standards in reducing to zero the amount of a recipient's monthly grant under the program of Aid to Families with Dependent Children (AFDC) during the period of her participation in a supported work program, the department's application of the same budgeting standards in redetermining the amount of her monthly AFDC grant, after termination of her employment, was in compliance with Federal statute and violated no equal protection right of the recipient under either the State or the Federal Constitution. [396-400]

CIVIL ACTION commencd in the Superior Court Department on February 3, 1984.

The case was heard by *Joseph S. Mitchell, Jr.,* J., on a motion for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Alan S. Ells* for the plaintiff.

*Kim E. Murdock,* Assistant Attorney General, for the defendant.

NOLAN, J. The plaintiff, Anne J. Campbell, appeals from a summary judgment entered in the Superior Court for the defendant.

The plaintiff argues that the use of retrospective budgeting by the Department of Public Welfare (department) to calculate the amount of public assistance to which she was entitled in October and November, 1983, (1) violated G. L. c. 118, § 2 (1984 ed.), (2) violated 42 U.S.C. § 602(a)(13)(B) (1982), and (3) denied her equal protection as guaranteed by the Four-

teenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights. We transferred the case to this court on our own motion. We affirm the judgment of the Superior Court. The relevant facts are summarized as follows.

In March, 1983, the plaintiff was residing with her minor son in Somerville, when she began receiving a grant from the department. The grant was issued under the program called Aid to Families with Dependent Children (AFDC). See G. L. c. 118, § 2. From March through June, 1983, the plaintiff received an AFDC grant at the maximum benefit level of $314.20 a month. See 106 Code Mass. Regs. § 304.420, 324 Mass. Reg. 30 (Aug. 12, 1982) (table of payment standards).

In June, 1983, the plaintiff voluntarily enrolled in a supported work program, sponsored by the New England School of Career Training under a contract with the department. See 106 Code Mass. Regs. § 307.250, 384 Mass. Reg. 41-42 (Oct. 6, 1983). The plaintiff continued to receive her AFDC grant during the first two months of her employment. However, during her third month of employment, the plaintiff was financially ineligible for AFDC. See 106 Code Mass. Regs. § 304.400, 324 Mass. Reg. 29 (Aug. 12, 1982) (table of eligibility standards). Nevertheless, under the department's regulations, the plaintiff's AFDC case remained open at a "zero" grant level. See 106 Code Mass. Regs. § 307.250(B) (1983).[1]

On October 7, 1983, the plaintiff's employment was terminated because of a reduction in her employer's workload. The plaintiff immediately notified the department of her changed financial circumstances and sought to have her AFDC grant restored. The plaintiff was informed that, because of the department's retrospective budgeting regulations, see infra, 396-398, she would not be eligible for an increased AFDC grant until December, 1983.

[1] In its brief, the department maintains that even at a "zero" grant level, the plaintiff continued to qualify for full medical assistance benefits, emergency assistance, food stamps, "Project Good Health," medical transportation, shelter vouchers, payments for funerals and burials, training expenses, and cribs, layettes, and mattresses for new-born infants.

On November 28, 1983, a hearing was held at the department's Somerville office regarding the plaintiff's AFDC eligibility and grant status. The hearing referee ruled that the department was required by § 307.250(B) to place the plaintiff on a "zero" grant status while she was in the supported work program. He further ruled that he was required to base his decision as to the plaintiff's grant eligibility on the applicable regulation. Accordingly, he ruled in favor of the department.

On February 3, 1984, the plaintiff filed a complaint in the Superior Court seeking review of the department's decision. See G. L. c. 30A, § 14 (1984 ed.). On May 7, 1984, the plaintiff filed a motion for summary judgment. See Mass. R. Civ. P. 56 (a), 365 Mass. 824 (1974). The defendant responded by filing an affidavit. See Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). On May 18, 1984, the judge denied the plaintiff's motion and entered judgment for the department. We now address the plaintiff's claims.

1. *G. L. c. 118, § 2.* The plaintiff argues that the use of retrospective budgeting to calculate her October and November benefits violated G. L. c. 118, § 2, which requires assistance to be paid "in advance." This issue is resolved by our decision in *Martinez* v. *Commissioner of Pub. Welfare, ante* 386 (1986), where we recognized that the amount of aid a recipient is entitled to receive "in advance" is based on the budgetary standards employed by the department. There was no error.

2. *Retrospective budgeting.* In 1981, Congress enacted the "Omnibus Budget Reconciliation Act of 1981" (OBRA), Pub. L. No. 97-35, reprinted in 1981 U.S. Code Cong. & Adm. News 357. Section 2315(a) of OBRA requires States that participate in the AFDC program to determine whether a family is eligible for AFDC by "prospective budgeting." Pursuant to 45 C.F.R. § 233.31(b)(1) (1985), " 'prospective budgeting' means that the [State] shall determine eligibility (and compute the amount of assistance for the first one or two months) based on its best estimate of income and circumstances which will exist in [the application] month." See 42 U.S.C. § 602(a)(13) (1982). See also *Martinez* v. *Commissioner of Pub. Welfare, supra.*

After eligibility and the amount to be received during the first one or two months have been determined, States are then required to use "retrospective budgeting" to calculate the amount a family is entitled to receive while on AFDC. See 45 C.F.R. § 233.25 (1985). Under retrospective budgeting, the State computes the amount of assistance for a payment month based on actual income or circumstances which existed in a previous month, which is known as the "budget month." 45 C.F.R. § 233.31(b)(2) (1985). 42 U.S.C. § 602(a)(13) (1982).

The essence of the plaintiff's claim is that the department was required by 42 U.S.C. § 602(a)(13) (1982), to use "prospective budgeting" to determine the amount of aid to which she was entitled to receive in October and November, 1983. The department utilized retrospective budgeting to determine the plaintiff's grant amount for those two months.

The plaintiff argues that under 42 U.S.C. § 602(a)(13) (1982), retrospective budgeting is to be used only when the "payment month" is *not* the first month in a period of consecutive months for which aid is payable. Thus, she reasons that since she was financially ineligible for AFDC in September (because of her earned income), the first month for which aid was payable to her was October, and, therefore, prospective budgeting procedures should have been utilized to calculate her grant for that month.

The department contends that "prospective budgeting" applies only in the case of a new AFDC recipient, and not to a person such as the plaintiff who was on AFDC but became financially ineligible for aid in a particular payment month. Moreover, under the department's regulations, a person in a supported work program is considered to be receiving assistance even though no grant is forthcoming for a particular payment month. See 106 Code Mass. Regs. § 307.250(B) (1983).[2] The

---

[2] Title 106 Code Mass. Regs. § 307.250(B) (1983) provides: "An individual who is participating in Supported Work shall be paid by the Supported Work contractor. Money received through Supported Work is considered earned income. The grant of a Supported Work participant shall be calculated in accordance with Section 304.500.

"If a Supported Work participant's financial eligibility ceases, the AFDC case shall remain open at a "zero" grant for the duration of the Supported

department further argues that, even if the plaintiff's interpretation of the statute is correct, the department was excused from complying with 42 U.S.C. § 602(a)(13) (1982), as a consequence of a "waiver" issued by the United States Secretary of Health and Human Services. See 42 U.S.C. § 1315(a)(1) (1982). We need not address the department's waiver argument, as we agree that retrospective budgeting was correctly applied in this case.

Federal regulations adopted by the Secretary specifically provide that a State "shall determine eligibility and compute the amount of the payment for all recipients prospectively for the *initial* month of assistance." 45 C.F.R. § 233.24(a) (1985). The regulations further provide that "[a]fter the *initial* one or two payment months of assistance under § 233.24, the amount of each *subsequent* month's payment shall be computed retrospectively, i.e., shall be based on earned and unearned income received in the corresponding budget month." 45 C.F.R. § 233.25(a) (1985). The department's regulation similarly provides that "[a]n applicant's benefits are determined prospectively for the first two (2) cyclical months, and retrospectively thereafter." 106 Code Mass. Regs. § 302.900, 332 Mass. Reg. 2 (Oct. 7, 1982).

Under the interpretation of 42 U.S.C. § 602(a)(13) (1982) urged by the plaintiff, the department would be required to alternate between retrospective and prospective budgeting depending upon whether aid was received during a particular month. This position is not supported by the statute or the applicable regulations. The plaintiff remained in the AFDC program during her employment and therefore the department was not required to utilize prospective budgeting for the months of October and November. Accordingly, we hold that the department appropriately applied retrospective budgeting to calculate the amount of the plaintiff's grant for those two months.

3. *Equal protection.* The plaintiff finally argues that the use of retrospective budgeting denied her equal protection guaran-

Work participation and the Supported Work participant and all members of the Assistance Unit shall be considered to be receiving assistance."

teed by the Fourteenth Amendment to the United States Constitution and the Massachusetts Declaration of Rights. In this regard, the plaintiff contends that "[t]he [d]epartment's budgeting regulations create irrational distinctions between similarly situated individuals who have experienced a complete loss of income by granting immediate assistance to some and denying any AFDC benefits to others for a full two months."

The plaintiff illustrates her argument by identifying three groups of individuals. The first group consists of those persons who lost their jobs and sought AFDC benefits for the first time. The second group consists of those persons who were once on AFDC, obtained employment in the private sector, lost their jobs, and sought AFDC again. The third group consists of persons such as the plaintiff who are AFDC recipients in a supported work program.

In each group, as the plaintiff must recognize, AFDC eligibility and the amount of aid to be received during the initial month is determined prospectively. See 106 Code Mass. Regs. § 302.900 (1982). Thus, there is no need to discuss further those persons in group one, since all applicants are treated the same when first applying for AFDC. The plaintiff does not argue otherwise.

The question then becomes whether the persons in the other two groups identified are subjected to different treatment in the same circumstances and, if so, whether the disparity in treatment is reasonable. "In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some 'reasonable basis,' it does not offend the Constitution simply because the classification 'is not made with mathematical nicety or because in practice it results in some inequality.'" *Dandridge* v. *Williams,* 397 U.S. 471, 485 (1970), quoting *Lindsley* v. *National Carbonic Gas Co.,* 220 U.S. 61, 78 (1911).

The department argues that applying retrospective budgeting to a person in the supported work program furthers the "legitimate governmental interest of conserving federal and state fiscal resources by providing a more accurate basis for deter-

mining benefits." Given the department's objective to preserve the fiscal integrity of the supported work program, the question is whether the application of retrospective budgeting to a person in the program "is a rational means of accomplishing that objective, free from invidious discrimination." *Opinion of the Justices,* 368 Mass. 831, 846 (1975). We find that it is.

When the plaintiff entered the supported work program in June, 1983, she was receiving a grant in an amount that was calculated pursuant to retrospective budgeting. The department states that during her first two months of employment, the plaintiff received her AFDC grant in addition to her employment wages. The department further indicates that an individual who leaves AFDC to enter private employment (nonsupported work) does not continue to "receive benefits for two months after obtaining employment."

Although the plaintiff was subjected to retrospective budgeting when her employment terminated in October, she had already received benefits in June and July that would not have been available to members in the other group of AFDC recipients identified by the plaintiff. Since AFDC eligibility is determined prospectively, see 106 Code Mass. Regs. § 302.940, 332 Mass. Reg. 3 (Oct. 7, 1982), the department argues that the benefits of a financially ineligible recipient are promptly terminated. A person in the supported work program remains on AFDC, however, notwithstanding financial ineligibility. See 106 Code Mass. Regs. § 307.250(B) (1983). By applying retrospective budgeting to the plaintiff, the department is merely balancing its use of available resources.

Accordingly, we conclude that retrospective budgeting as applied to the plaintiff is reasonably related to the State's objective to preserve the financial integrity of the public welfare system, and, therefore, does not deny the plaintiff equal protection.

*Judgment affirmed.*